1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT
9          FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

**United States District Court**
For the Northern District of California

11   MANSE SULLIVAN,                    )    No. C 04-02089 EJD (PR)
                                        )
12              Plaintiff,              )    ORDER GRANTING MOTION FOR
                                        )    SUMMARY JUDGMENT; GRANTING
13        vs.                           )    DEFENDANTS' REQUEST FOR
                                        )    JUDICIAL NOTICE; GRANTING
14                                      )    PLAINTIFF'S MOTION TO FILE
     T. P. RYAN, et al.,                )    EXCESS PAGES
15                                      )
                Defendants.             )
16                                      )
     _____   )    (Docket Nos. 65, 67, 72 & 73)
17

18        Plaintiff, a "sexually violent predator" under civil commitment at Coalinga State

19   Hospital for renewable periods of two years under California's Sexually Violent

20   Predator Act, Cal. Welf. & Inst. Code § 6600 ("SVPA"), and proceeding pro se, filed a

21   civil rights complaint pursuant to 42 U.S.C. § 1983.  Plaintiff alleged, among other

22   claims, that during the time that he was temporarily detained at the Santa Clara County

23   Jail ("SCCJ"), Defendants violated his constitutional rights by housing him under

24   conditions that were both punitive and unlawful as applied to civil detainees.

25        After Plaintiff's original complaint was dismissed with leave to amend to correct

26   various deficiencies, he filed an amended complaint which, when liberally construed,

27   stated cognizable claims under § 1983.  On September 30, 2008, the Court granted

28   summary judgment in favor of Defendants County of Santa Clara, the Santa Clara

1    County Board of Supervisors, Chief Edward Flores, Captain Toby Wong, Lieutenant

2    Mitchell Conner, Lieutenant Kristen Tarabetz, Sergeant Paul Jones, and Officer William

3    Burden on the grounds that Plaintiff's claims were barred by res judicata.  (See Docket

4    No. 52.)  Plaintiff appealed, and the United States Court of Appeals for the Ninth

5    Circuit affirmed summary judgment as to Plaintiff's claims arising from his

6    confinement in 1999, but reversed and vacated the judgment as to Plaintiff's claims

7    arising from his confinement in 2003 and 2004, finding those claims were not

8    precluded.  (See Docket No. 60.)

9         The Court reopened the action and ordered further briefing with respect to

10   Plaintiff's 2003 and 2004 claims.  Defendants filed a motion for summary judgment.

11   (Docket No. 65.)  Plaintiff filed an opposition and a cross-motion for summary

12   judgment with a motion for leave to file excess pages, (Docket No. 73), and Defendants

13   filed a reply.  Plaintiff's motion for leave to file excess pages is GRANTED.

14

15                                   **BACKGROUND**

16        California's SVPA is codified at California Welfare & Institutions Code §§

17   6600-6609.3.  In Hydrick v. Hunter, 500 F.3d 978, 983 (9th Cir. 2007), the Ninth

18   Circuit summarized how the SVPA works.  The SVPA defines a sexually violent

19   predator (SVP) as a person "convicted of a sexually violent offense against two or more

20   victims for which he or she received a determinate sentence and who has a diagnosed

21   mental disorder that makes the person a danger to the health and safety of others" that

22   is, is "likely [to] engage in sexually violent criminal behavior."  Id. at 983 (citing Cal.

23   Welf. & Inst. Code § 6600(a)).[1]  At least six months before a person who has committed

24   the predicate offenses is to complete his sentence, he is evaluated by the Department of

25   Corrections and Department of Mental Health.  Id. (citing § 6601).  If those two

26   departments agree that the person evaluated may be a SVP, a petition for commitment

27

28        [1] All code section references are to the Welfare and Institutions Code unless
     noted otherwise.

United States District Court

For the Northern District of California

1   may be filed by the district attorney or counsel for the county in which the evaluated

2   person was convicted.  Id. (citing § 6601(i)).  If that person is found by a jury to be a

3   SVP who poses a danger to the health and safety of others, he is civilly committed for

4   an indefinite period to commence after his criminal sentence is fulfilled.  Id. (citing §§

5   6602-6604).

6        Each year, an SVP has a right to a show cause hearing to determine whether his

7   commitment should be continued.  Id. at 984. (citing § 6605(a)-(b)).  If it is found that

8   the SVP continues to be a danger to the health or safety of the community, the person is

9   committed for two years from the date of the finding.  Id. (citing § 6605(e)).  These

10  successive periods of commitment can be continued indefinitely, or until the SVP

11  completes all five phases of treatment.  Upon successful completion of Phase Five, the

12  SVP is conditionally released under the supervision of the California Mental Health

13  Department.  Id.

14       It is undisputed that Plaintiff was found by a jury to be a "sexually violent

15  predator" under California's Sexually Violent Predator Act, Cal. Welf. & Inst. Code §

16  6600 ("SVPA"), and was civilly committed for renewable periods of two years.  (Am.

17  Compl. at 4.)  The claims on remand arise from Plaintiff's confinement from 2003 to

18  2004, which covers Plaintiff's placement in the administrative segregation housing

19  ("ASH"), which has tighter security restrictions, as of November 2, 2002, after an

20  altercation with another civil detainee.  (Id. at 10.)  Plaintiff was housed in ASH for

21  about eighteen and a half months before being moved to less restrictive housing.  (Id. at

22  11.)

23       Plaintiff claims that during his detainment at SCCJ, he was subjected to

24  conditions of confinement that were punitive and unlawful as applied to civil detainees.

25  Specifically, he alleges he was forced to live in "deplorable conditions" when he first

26  arrived at the jail, that he was placed in a housing area that was more restrictive than the

27  main population housing for penal inmates, and that he was intentionally and

28  unreasonably denied his right to continue mental health treatment, religious services,

United States District Court

For the Northern District of California

1    drug and alcohol rehabilitation treatment, and educational programs.  Plaintiff alleges

2    that Defendants refused to provide appropriate food, clothing, visiting, and conjugal

3    visiting that are conducive to his mental and physical health needs.

4            Defendants have filed a request for judicial notice of documents involving the

5    adjudication of a prior action filed by Plaintiff in state court, which include the

6    following: (1) Plaintiff's state complaint; (2) demurrers filed by state defendants; (3) the

7    state superior court's order sustaining the demurrers with leave to amend; (4) state

8    defendants' motion to dismiss; and (5) notice of entry of judgment dismissing Plaintiff's

9    state complaint with prejudice.  (Docket No. 67.)  Defendants' request for judicial

10   notice is GRANTED.[2]

11

12                                    **DISCUSSION**

13   **I.    Standard of Review**

14           Summary judgment is proper where the pleadings, discovery and affidavits show

15   that there is "no genuine issue as to any material fact and that the moving party is

16   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those

17   which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S.

18   242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence

19   for a reasonable jury to return a verdict for the nonmoving party.  See id.

20           The court will grant summary judgment "against a party who fails to make a

21   showing sufficient to establish the existence of an element essential to that party's case,

22   and on which that party will bear the burden of proof at trial[,] . . . since a complete

23

24           [2] Plaintiff also filed a request for judicial notice of documents submitted
     along with his opposition.  (Docket No. 72.)  It appears that Plaintiff has submitted
25   similar documents before.  (See Docket No. 40.)  Defendants object to the request
     on the grounds that the documents have not been properly authenticated and are not
26   the proper subject of judicial notice under Federal Rule of Evidence 201. (Reply at
     2; Docket No. 74.)  After reviewing the documents, the Court agrees.  Accordingly,
27   Plaintiff's request for judicial notice is DENIED.  However, the Court will consider
     individually the probative value of relevant documents as cited by in Plaintiff's
28   pleadings in deciding Defendants' motion for summary judgment.

1   failure of proof concerning an essential element of the nonmoving party's case

2   necessarily renders all other facts immaterial."  See Celotex Corp. v. Catrett, 477 U.S.

3   317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact

4   is material if it might affect outcome of suit under governing law; further holding

5   dispute about material fact is genuine "if the evidence is such that a reasonable jury

6   could return a verdict for the nonmoving party").  The moving party bears the initial

7   burden of identifying those portions of the record that demonstrate the absence of a

8   genuine issue of material fact.  The burden then shifts to the nonmoving party to "go

9   beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to

10  interrogatories, or admissions on file,' designate 'specific facts showing that there is a

11  genuine issue for trial.'"  See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

12      For purposes of summary judgment, the court must view the evidence in the light

13  most favorable to the nonmoving party; if the evidence produced by the moving party

14  conflicts with evidence produced by the nonmoving party, the court must assume the

15  truth of the evidence submitted by the nonmoving party.  See Leslie v. Grupo ICA, 198

16  F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion

17  is not to make credibility determinations or weigh conflicting evidence with respect to a

18  disputed material fact.  See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809

19  F.2d 626, 630 (9th Cir. 1987).

20  **II.    Legal Claims and Analysis**

21      The only claims on remand arise from Plaintiff's confinement during 2003 and

22  2004.  Defendants argue they are entitled to summary judgment for several reasons, the

23  foremost being that Plaintiff's claims are barred by collateral estoppel.  Substantively,

24  Defendants assert that Plaintiff has failed to establish that his constitutional rights were

25  violated.  (Id. at 5.)  Defendants also argue that individual defendants are entitled to

26  qualified immunity, and that there is no evidence to support a claim against the Board

27  members or the County.  Lastly, Defendants assert that Plaintiff failed to exhaust his

28  administrative remedies. For the reasons stated below, the Court will grant the motion

1    for summary judgment.

2         A.    **Collateral estoppel**

3         The federal courts have traditionally adhered to the related doctrines of res

4    judicata and collateral estoppel.[3]  See Allen v. McCurry, 449 U.S. 90, 94 (1980).

5    Under collateral estoppel, once an issue is actually and necessarily determined by a

6    court of competent jurisdiction, that determination is conclusive in subsequent suits

7    based on a different cause of action involving a party to the prior litigation.  See

8    Montana v. United States, 440 U.S. at 153.

9         The Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, requires that a

10   federal court give to a state court judgment the same preclusive effect as would be given

11   that judgment under the law of the state in which the judgment was rendered.  See

12   Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  There is no

13   exception to the rules of issue and claim preclusion for federal civil rights actions under

14   42 U.S.C. § 1983.  See Clark v. Yosemite Community College Dist., 785 F.2d 781, 788

15   n.9 (9th Cir. 1986).  The Supreme Court has made it clear that a § 1983 claim brought in

16   federal court is subject to principles of issue and claim preclusion by a prior state court

17   judgment.  See Allen, 449 U.S. at 97-98 (issue preclusive effect in federal court of state

18   proceedings is same as that accorded in state's own courts); Migra v. Warren City

19   School Dist. Bd. of Educ., 465 U.S. 75, 84 (1984) (extending rule of Allen to cover

20   claim preclusion as well as issue preclusion).

21        Collateral estoppel, or issue preclusion, only bars the relitigation of issues

22   explicitly litigated and necessary to the judgment.  See Hiser v. Franklin, 94 F.3d 1287,

23   1292 (9th Cir. 1996).  To foreclose relitigation of an issue under federal law: (1) the

24   issue at stake must be identical to the one alleged in the prior litigation; (2) the issue

25

26        [3] The doctrine of res judicata, or claim preclusion, "'bars all grounds for
     recovery which could have been asserted, whether they were or not, in a prior suit
27   between the same parties . . . on the same cause of action.'"  C.D. Anderson & Co.,
     Inc. v. Lemos, 832 F. 2d 1097, 1100 (9th Cir. 1987) (citing McClain v. Apodaca,
28   793 F.2d 1031, 1033 (9th Cir. 1986)).

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  must have been actually litigated by the party against whom preclusion is asserted; and

2  (3) the determination of the issue in the prior litigation must have been a critical and

3  necessary part of the judgment in the earlier action.  See Gospel Missions v. City of Los

4  Angeles, 328 F.3d 548, 553-54 (9th Cir.), cert. denied, 540 U.S. 948 (2003).  Because

5  collateral estoppel does not apply where the party against whom an earlier court

6  decision is asserted did not have a full and fair opportunity to litigate the claim or issue

7  decided in state court, see Allen v. McCurry, 449 U.S. at 101, the redetermination of

8  issues may be warranted if there is reason to doubt the quality, extensiveness, or

9  fairness of procedures followed in the prior litigation, see Montana, 440 U.S. at 164,

10  n.11.

11      The facts of the prior state action are as follows.  In November 2002, Plaintiff

12  filed a state complaint against Santa Clara County ("the County") and its employees

13  based on the same conduct alleged in his federal complaint.  Sullivan v. Santa Clara

14  County Board of Supervisors, et al., Santa Clara County Superior Court Case No.

15  210426.  (Docket No. 67, Ex. A.)  Defendants argue that Plaintiff's state complaint

16  involved identical issues as the ones raised in the instant complaint, i.e., that

17  Defendants: "(1) detained him falsely at the County jail instead of instead of a mental

18  health facility, (2) denied him mental health treatment, (3) housed him with criminal

19  detainees, (4) treated him like a criminal detainee, (5) caused physical injury to his back

20  because of the bedding he was given, (6) caused him to suffer from a Herpes outbreak,

21  and (7) deprived him of phone calls and adequate and nutritious meals."  (Defs.' Mot.

22  Summ. J. at 5.)

23      Defendants prevailed in the state court case.  On March 3, 2003, Defendants filed

24  demurrers to the complaint arguing, among other things, that the claims asserted in the

25  complaint were barred by res judicata, Plaintiff failed to comply with the Torts Claim

26  Act, and Plaintiff's claims were barred by statutory immunities.  (Docket No. 67, Ex.

27  B.)  The state court sustained the demurrer with leave to amend on June 6, 2003.  (Id.,

28  Ex. C.)  Plaintiff did not file an amended complaint.  On July 16, 2003, Defendants

United States District Court
For the Northern District of California

1    moved to dismiss the action. (Id., Ex. D.)  The state court dismissed the 2002 lawsuit in

2    its entirety on or about October 6, 2003, with prejudice.  (Id., Ex. E.)

3            It is undisputed that Defendants prevailed in the state court action Plaintiff

4    brought against them for unconstitutional violations during his detainment at SCCJ,

5    which covered the period of confinement from "October 16, 2001, to present," i.e., until

6    May 2003, when Defendants filed the demurrers.  (Id., Ex. B.)  Nor does Plaintiff

7    dispute that his complaint here is essentially a repeat of the state court complaint against

8    the same defendants and on the same facts.[4]  Rather, he asserts that the Ninth Circuit's

9    remand of his 2003 and 2004 claims means that Defendants failed to show that res

10   judicata barred those claims, and that they therefore cannot raise it again.  (Oppo. at 7-

11   8.)  Plaintiff fails to see the distinction between res judicata (claim preclusion) and

12   collateral estoppel (issue preclusion).  While the Ninth Circuit found that res judicata

13   does not apply to bar the 2003 and 2004 claims because that period of confinement was

14   not the subject of Plaintiff's state court lawsuit, their decision does not preclude

15   Defendants from raising collateral estoppel as barring already litigated issues from the

16   state lawsuit.  Accordingly, the Court must determine whether collateral estoppel bars

17   the relitigation of issues that were explicitly litigated and necessary to the judgment in

18   the prior state action.

19           To determine whether the issues are in substance the same as those resolved in

20   the prior proceedings, the court must determine whether the "'question expressly and

21   definitely presented in this suit is the same as that definitely and actually litigated and

22   adjudged'" in the prior action.  See Montana 440 U.S. at 155 (citation omitted); see,

23   e.g., Hiser, 94 F.3d at 1290-91 (issue preclusion does not bar federal court's

24   consideration of prisoner's photocopying claim where issue of photocopying was not

25   adjudicated in prior class action).  The Ninth Circuit has adopted four factors to be

26

27           [4] The Defendants named in the 2002 lawsuit were the Santa Clara County
     Board of Supervisors, Timothy Ryan, Dennis Handis, and P. Jones.  (See Docket
28   No. 67, Ex. A.)

United States District Court

For the Northern District of California

1    considered in determining whether the issue in a proceeding is identical to an issue

2    previously litigated: (1) whether there is a substantial overlap between the evidence or

3    argument to be advanced in the second proceeding and that advanced in the first; (2)

4    whether the new evidence or argument involves the application of the same rule of law

5    as that involved in the prior proceeding; (3) whether pretrial preparation and discovery

6    related to the matter presented in the first action could reasonably have been expected to

7    embrace the matter sought to be presented in the second; and (4) whether the claims

8    involved in the two proceedings are closely related.  See Steen v. John Hancock Life

9    Insurance, Co., 106 F.3d 904, 913 (9th Cir. 1997)

10        Defendants assert that Plaintiff's state complaint involved identical issues as the

11    ones raised in the instant complaint, i.e., that Defendants: "(1) detained him falsely at

12    the County jail instead of instead of a mental health facility, (2) denied him mental

13    health treatment, (3) housed him with criminal detainees, (4) treated him like a criminal

14    detainee, (5) caused physical injury to his back because of the bedding he was given, (6)

15    caused him to suffer from a Herpes outbreak, and (7) deprived him of phone calls and

16    adequate and nutritious meals."  (Defs.' Mot. Summ. J. at 5 (from hereon "Mot.").)  A

17    review of Plaintiff's state complaint shows that this is indeed the case.  (See e.g.,

18    Docket No. 67, Ex. A at 5, 7, 9, 21 and 25.)  As such, it is clear that there would be a

19    substantial overlap between the evidence to be advanced in the instant federal action as

20    in the prior state action, and that pretrial preparation and discovery would encompass

21    the same material.  See Steen, 106 F.3d at 912.  Furthermore, the claims involved in the

22    two proceedings are closely related as Plaintiff applies the same general allegations

23    from his 1999 confinement to his 2003 to 2004 period of confinement.  Lastly, Plaintiff

24    fails to provide any new evidence or argument that would differentiate the instant issues

25    from the prior litigation.

26        Defendants also assert that the issues were "actually litigated" in the state action

27    because the parties in that proceeding presented argument and evidence concerning

28    those issues and the state court sustained the demurrer on the merits, finding that

United States District Court

For the Northern District of California

1    Plaintiff failed to state a cause of action.  (Mot. at 5.)  Plaintiff's state complaint was

2    dismissed due to his failure to amend his complaint after the state court sustained

3    Defendants' demurrers to the various claims.  The demurrers were based, among other

4    reasons, on Plaintiff's failure to state a cause of action.  The court order sustaining the

5    demurrers stated: "Good cause appearing, IT IS ORDERED that the demurrers are

6    sustained with 30 days leave within which to amend."  (Docket No. 67, Ex. C.)  Plaintiff

7    was granted leave to amend to correct the deficiencies of the pleadings in his state

8    complaint, *i.e.*, to state facts sufficient to constitute a cause of action.  Plaintiff did not

9    do so.  Defendants filed a motion to dismiss based on Plaintiff's failure to file a timely

10    amended complaint, and the state court granted the motion.  Clearly, Plaintiff had a full

11    and fair opportunity to litigate the issues decided in state court, but he failed to

12    diligently pursue his action by filing an amended complaint.

13    Collateral estoppel may not apply if the particular circumstances of the case

14    justify an exception to the general principles of estoppel.  See id. at 162 (party may not

15    be compelled to accept state court's determination of federal claims over which party

16    has properly invoked federal court jurisdiction).  The possible application of the limited

17    exceptions to the doctrine of collateral estoppel requires three inquiries: (1) whether the

18    issues presented are in substance the same in the present and prior litigation; (2)

19    whether controlling facts or legal principles have changed significantly since the prior

20    judgment; and (3) whether other special circumstances warrant an exception to the

21    normal rules of preclusion.  See Steen v. John Hancock Life Insurance, Co., 106 F.3d

22    904, 913 (9th Cir. 1997).  Here, Plaintiff has presented no argument to suggest that any

23    such exception should apply, either by showing significant changes in fact or law or

24    alleging other special circumstances.  Accordingly, collateral estoppel applies to bar

25    those issues that were actually litigated in the prior state action.  However, because the

26    issues themselves are convoluted due to the nature of Plaintiff's allegations, the Court

27    will address the substance of the claims as addressed by Defendants in their motion.

28        **B.**    **Claims against individually-named Defendants**

1    Defendants argue that Plaintiff fails to establish that his constitutional rights were

2    violated by the following alleged actions of individually-named Defendants: (1)

3    Defendant Conner, as the Classification Sergeant, endorsed and finalized all the paper

4    work allowing Classification employees to detain Plaintiff in ASH; (2) Defendant

5    Burden removed a prescribed medical bed support, *i.e.*, an egg crate mattress, from

6    Plaintiff's cell; (3) Defendant Tarabetz denied Plaintiff the use of a second mattress; and

7    (4) Defendants Flores and Wong refused to acknowledge that alleged violations were

8    being committed by their subordinates and others working at SCCJ.   (Mot. at 5.)

9    Defendants assert that none of these alleged acts amount to a constitutional violation.

### 1.    Placement in ASH

11    A civil detainee awaiting adjudication is entitled to conditions of confinement

12   that are not punitive.  Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004).  A restriction

13   is punitive where it is intended to punish, or where it is excessive in relation to its non-

14   punitive purpose, or is employed to achieve objectives that could be accomplished in so

15   many alternative and less harsh methods.  Id. at 933-34 (citations omitted).  Legitimate,

16   non-punitive government interests include ensuring a detainee's presence at trial,

17   maintaining jail security, and effective management of a detention facility.  Id. at 932.

18    With respect to an individual confined awaiting adjudication under civil process,

19   such as Plaintiff, a presumption of punitive conditions arises where the individual is

20   detained under conditions identical to, similar to, or more restrictive than those under

21   which pretrial criminal detainees are held, or where the individual is detained under

22   conditions more restrictive than those he or she would face upon commitment.  Id. at

23   934.  The government must be afforded an opportunity to rebut this presumption.  See

24   id. at 934-35 (on remand, government should be permitted to demonstrate legitimate,

25   non-punitive interests justifying the conditions of detainee awaiting SVPA proceedings,

26   and to show that the restrictions imposed on detainee were not excessive in relation to

27   these interests).

28    Defendants do not deny that Plaintiff was placed in ASH, along with criminal

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    detainees, for a period of eighteen months, but they contend that they had legitimate

2    non-punitive reason for doing so.  (Mot. at 9.)  Defendants assert that Plaintiff was

3    originally placed in the E-Dorm that houses civil detainees.  (D. Sepulveda Decl. at 2-3;

4    Docket No. 66.)   However, it is undisputed that Plaintiff got into an altercation with

5    another civil detainee which required the Main Jail to place him in ASH.  (Id. at 3.)

6    Defendants assert that Plaintiff's classification was reviewed periodically and that he

7    was subsequently placed back in the E-Dorm after the inmate with whom he had the

8    altercation was transferred.  (Id.)  According to Defendants, the period that Plaintiff was

9    housed in ASH was necessary for the operations and to maintain security in the Main

10   Jail.  (Id.)  Defendants assert that the housing was appropriate for SVPs who may be

11   prone to assault others, such as Plaintiff, and that at all times was the least restrictive

12   housing that jail officials could provide for Plaintiff while at the same time providing

13   for the jails' own "legitimate, non-punitive interests in maintaining jail security,

14   including Plaintiff's own safety, ensuring Plaintiff's presence at his various SVP

15   proceedings, and safe and effective operation of the jail."  (Mot. at 9.)

16       Regarding Plaintiff's complaint about the amount of time he spent in his cell

17   each day, Defendants assert that such time resulted "from the necessity of rotating

18   scheduled time out" and ensuring that SVPs in ASH would not be out of their cells "at

19   times when they would be in danger of encountering other persons who were also

20   housed in protective custody."  (Sepulveda Decl. at 2.)  Defendants argue that because

21   they had legitimate governmental objectives in the management of the institution in

22   placing Plaintiff in ASH and the restrictions placed on him were no more than

23   necessary, there was no constitutional violation.

24       In opposition, Plaintiff asserts that his "substantive rights and protections... were

25   not protected" and that he experienced violations of his constitutional rights, e.g.,

26   discrimination against him on account of his status as a SVP and pretrial detainee in

27   violation of the Fourteenth Amendment and Equal Protection Clause.  (Oppo. at 12.)

28   However, he fails to support these general allegations with specific facts, and without

United States District Court

For the Northern District of California

1    such, renders his allegations conclusory.  Plaintiff also states that he should have only

2    spent 60 days in the ASH, and that it elapsed into "18 1/2 months."  (Oppo. at 13.)

3    However, Plaintiff offers no evidence to contradict Defendants' showing of legitimate,

4    non-punitive governmental interests for placing him in ASH for that length of time, and

5    that the restrictions imposed therein were not excessive in relation to those interests.

6    Accordingly, it cannot be said that Defendant Conner violated Plaintiff's constitutional

7    rights when he approved Plaintiff's placement in ASH.  There being no genuine issue of

8    material fact, Defendant is entitled to summary judgment on this claim.

### 2.    Medical needs

10   Plaintiff claims that he suffered a lower back and right shoulder injury for which

11   doctors had recommended pain medication and an extra mattress "to reduce the strain."

12   (Am. Compl. at 19.)  Although a second mattress was not approved, it was

13   recommended that Plaintiff be given a "medical egg crate if available" which was

14   eventually provided to him.  (Id.)   Plaintiff claims that his Eighth Amendment right to

15   proper medical treatment was violated when Defendant Burden removed the prescribed

16   egg crate mattress from his cell during a security search, and when Defendant Tarabetz

17   subsequently did not approve a second mattress.  (Id. at 20.)

18   Deliberate indifference to serious medical needs violates the Eighth

19   Amendment's proscription against cruel and unusual punishment.  See Estelle v.

20   Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.

21   1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133,

22   1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986).  A

23   determination of "deliberate indifference" involves an examination of two elements: the

24   seriousness of the prisoner's medical need and the nature of the defendant's response to

25   that need.  See McGuckin, 974 F.2d at 1059.

26   A "serious" medical need exists if the failure to treat a prisoner's condition could

27   result in further significant injury or the "unnecessary and wanton infliction of pain."

28   McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104).  The existence of an

United States District Court

For the Northern District of California

1    injury that a reasonable doctor or patient would find important and worthy of comment

2    or treatment; the presence of a medical condition that significantly affects an

3    individual's daily activities; or the existence of chronic and substantial pain are

4    examples of indications that a prisoner has a "serious" need for medical treatment.  Id.

5    at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

6           A prison official is deliberately indifferent if he knows that a prisoner faces a

7    substantial risk of serious harm and disregards that risk by failing to take reasonable

8    steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official

9    must not only "be aware of facts from which the inference could be drawn that a

10   substantial risk of serious harm exists," but he "must also draw the inference."  Id.  If a

11   prison official should have been aware of the risk, but was not, then the official has not

12   violated the Eighth Amendment, no matter how severe the risk.  Gibson v. County of

13   Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).  In order for deliberate indifference to be

14   established, therefore, there must be a purposeful act or failure to act on the part of the

15   defendant and resulting harm.  See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd.

16   of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

17          Defendants argue that even assuming that Plaintiff's allegations are true, the

18   alleged acts do not amount to cruel and unusual punishment.  (Mot. at 10.)  They assert

19   that Plaintiff's egg crate mattress was taken away because he was housed in a high

20   security floor that did not allow inmates to have a second mattress.  (Sepulveda Decl. at

21   2.)  Defendants contend that Plaintiff's condition of confinement, *i.e.*, not being allowed

22   a second mattress, was reasonably related to a legitimate governmental objective, and

23   therefore did not violate his constitutional rights.  (Mot. at 11.)  Furthermore,

24   Defendants assert that Plaintiff fails to show that they violated his Eighth Amendment

25   right because there is no evidence that they acted with a culpable state of mind, *i.e.*, that

26   they knew of and disregarded an excessive risk to his health and safety.

27          In opposition, Plaintiff reasserts his claim that he was suffering from lower back

28   and right shoulder pain which could only be relieved by the use of the egg crate

1    mattress.  (Oppo. at 15.)  Plaintiff insists that the egg crate mattress was a medical

2    treatment prescribed by a doctor, such that without it, Plaintiff was subjected to an

3    "environment of unnecessary and wanton infliction of personal humiliation, mental

4    anguish, and pain and suffering."  (Id. at 17.)  However, the issue is not the seriousness

5    of Plaintiff's medical condition, but rather the nature of Defendants' response.

6           Assuming that Plaintiff's medical condition was serious, Plaintiff fails to show

7    that Defendant Burden removed the egg crate mattress with the awareness that doing so

8    would expose Plaintiff to a substantial risk of serious harm.  Although Plaintiff asserts

9    that Defendant Burden confiscated the egg crate mattress on the "pretense" that it was

10   no longer allowed, (Am. Compl. at 20), Defendants point to evidence submitted by

11   Plaintiff that shows egg crate mattresses were no longer medically authorized as of

12   November 2002, and that only specific circumstances would warrant authorization of an

13   extra mattress.  (Reply at 11; Oppo., Ex. 7.)  Furthermore, Plaintiff has offered no

14   evidence to contradict the fact that Defendant Burden was acting in accordance with

15   prison security policy which did permit inmates to have a second mattress on a high

16   security floor.  (Sepulveda Decl. at 2.)   After Plaintiff appealed the confiscation of the

17   mattress, medical staff reviewed his medical record and denied the appeal because

18   Plaintiff did not meet any of the criteria for issuance of a second mattress.  (Oppo., Ex.

19   7.)  Moreover, the memorandum setting forth the criteria explicitly states that a clinic

20   appointment should be made for the inmate if a nursing staff has any doubts about the

21   appropriateness of the request or evaluation.  (Id.)  It does not appear that there were

22   any such doubts here.

23          Plaintiff also claims that an orthopaedic surgeon "theorized" that an extra

24   mattress might alleviate Plaintiff's pain by giving more support and cushion for his

25   lower back, and wrote out an order for it in March 2004.  (Am. Compl. at 20.)

26   However, Defendant Tarabetz denied the request for approval with the statement that

27   "high security floor where 2nd mattress is not allowed."  (Id. at 21.)  Plaintiff again fails

28   to state a claim against Defendant Tarabetz because there is no evidence to show that

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   Defendant Tarabetz was aware of any risk of serious harm to Plaintiff by denying him a

2   second mattress.  Lastly, even if Defendants should have been aware of the risk but

3   were not, there can be no Eighth Amendment violation, no matter how severe the risk.

4   Gibson, 290 F.3d at 1188.

5                    **3.    Supervisor liability**

6          Plaintiff claims that Defendants Wong and Flores are liable as supervisors for the

7   alleged violations by their subordinates, and for failing to acknowledge the violations by

8   other workings in the Main Jail.

9          A supervisor may be liable under section 1983 upon a showing of (1) personal

10  involvement in the constitutional deprivation or (2) a sufficient causal connection

11  between the supervisor's wrongful conduct and the constitutional violation.  Redman v.

12  County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted).

13  A supervisor therefore generally "is only liable for constitutional violations of his

14  subordinates if the supervisor participated in or directed the violations, or knew of the

15  violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th

16  Cir. 1989).  "It has long been clearly established that '[s]upervisory liability is imposed

17  against a supervisory official in his individual capacity for his own culpable action or

18  inaction in the training, supervision, or control of his subordinates, for his acquiescence

19  in the constitutional deprivations of which the complaint is made, or for conduct that

20  showed a reckless or callous indifference to the rights of others.'"  Preschooler II v.

21  Davis, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted).

22         Defendants assert that there is no causal link between Defendants Wong and

23  Flores and the alleged wrongs committed by their subordinates, and deny that they were

24  even aware of Plaintiff's alleged deprivations.  (Mot. at 12.)  Plaintiff in opposition

25  claims that it is "unquestionable" that Defendants have "personal knowledge of [their]

26  work environment" and that it was part of their job description to "review, endorse, and

27  finalize documents, incident reports on staff behavior."  (Oppo. at 17.)  He alleges that

28  Defendants were "well aware of the conditions and treatment of SVPs at the Main Jail,

but refused to intervene in the methods their subordinates applied towards SVPs, and especially to Plaintiff."  (Id.)  However, Plaintiff fails to provide evidence to support his allegation that Defendants were actually aware of any such violations against him, such that their failure to prevent them renders them culpable.  See e.g., Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006).  Without such evidence, his allegations are conclusory. Lastly, Plaintiff fails to state a claim of supervisor liability because he makes no allegation that Defendants actually participated in or directed the violations of his rights, Taylor, 880 F.2d at 1045, or makes any allegation that either Defendant Wong or Flores were personally involved with the alleged violations.  See Redman, 942 F.2d at 1446.

### 4.   **Qualified immunity**

Defendants argue alternatively that qualified immunity shields the individually-named Defendants from liability.  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful."  Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).  Qualified immunity is particularly amenable to summary judgment adjudication, Martin v. City of Oceanside, 360 F.3d 1078, 1081 (9th Cir. 2004).  A defendant must allege qualified immunity as an affirmative defense.  See Gomez v. Toledo, 446 U.S. 635, 640 (1980).

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    right was clearly established such that it would be clear to a reasonable officer that his

2    conduct was unlawful in the situation he confronted.  See Pearson v. Callahan, 129 S.

3    Ct. 808, 818 (2009) (overruling the sequence of the two-part test that required

4    determination of a deprivation first and then whether such right was clearly established,

5    as required by Saucier v. Katz, 533 U.S. 194 (2001)).  The court may exercise its

6    discretion in deciding which prong to address first, in light of the particular

7    circumstances of each case.  Id. (noting that while the Saucier sequence is often

8    appropriate and beneficial, it is no longer mandatory).

9         Defendants argue that the controlling case in this matter, Jonas v. Blanas, 393

10   F.3d 918 (2004), was decided on December 27, 2004, which was after the period during

11   which Plaintiff's claims arose.  (Mot. at 18.)  The Ninth Circuit in Jonas held that a civil

12   detainee at a secure facility should be given "more considerate treatment" than criminal

13   detainees. (Id.)  Thus, Defendants assert that they had no reasonable notice that persons

14   detained under the SVPA were entitled to "more considerate treatment" under the

15   Fourteenth Amendment than persons detained under criminal process.  In other words,

16   the law was not so clearly established before Jonas such that it would have been clear to

17   Defendants that Plaintiff, as an SVP detainee, was entitled to different conditions of

18   confinement from criminal detainees.  In opposition, Plaintiff insists that he has shown

19   that Defendants violated his constitutional rights and that he is entitled to damages.

20   (Oppo. at 34-35.)

21        Even assuming that Jonas and the relevant decisions preceding it established that

22   civil detainees were entitled to non-punitive treatment, Plaintiff fails to defeat

23   Defendants' assertion of qualified immunity.  With respect to Plaintiff's placement in

24   ASH, Jonas established that a detainee awaiting SVP proceedings may be subject to

25   restrictions based on legitimate, non-punitive interests and as long as such restrictions

26   are not excessive in relation to those interests. See Jones, 393 F.3d at 934-35.  Here,

27   Defendants have shown that they had legitimate, non-punitive interests in maintaining

28   jail security, including Plaintiff's own safety, ensuring Plaintiff's presence at his various

Order Granting Motion for Summary Judgment
P:\PRO-SE\SJ.EJD\OLDER CASES\Sullivan04-02089_grant-msj.wpd          18

SVP proceedings, and the safe and effective operation of the jail.  See supra at 12.
Accordingly, it cannot be said that it would have been clear to Defendant Conner that it
was unlawful to place Plaintiff in ASH under such circumstances.

Qualified immunity also applies to shield Defendants Burden and Tarabetz from
liability.  As discussed above, Plaintiff has failed to establish that Defendants violated
his Eighth Amendment right by denying him the use of an egg crate mattress or other
second mattress.  See supra at 16. It is undisputed that the high level security floor does
not allow inmates to have a second mattress, and Defendants have shown that they acted
in accordance with that regulation.  Id.  Furthermore, the County's policy allows an
officer to override a doctor's orders if such orders posses a threat to the security and
safety of the inmates and institution.  (Sepulveda Decl. at 3.)  Defendants had no reason
to believe that their actions were unlawful when they were empowered to act
accordingly under this policy.  Nor is there any evidence to suggest that the policy itself
has been determined to be unlawful.

Lastly, with respect to the claims against Defendants Wong and Flores, the Court
has determined that Plaintiff has failed to show that these Defendants deprived him of a
constitutional right.  See supra at 16-17.  Accordingly, they are also entitled to qualified
immunity.

### C.    Claims against the County and the Board

Plaintiff claims that the County of Santa Clara ("County") and the Santa Clara
County Board of Supervisors ("Board") are responsible for the "dangerous conditions"
to which he was subjected during his confinement.  (Am. Compl. at 18.)  Plaintiff also
alleges that the County provided inadequate mental health treatment, access to religious
services, drug and alcohol rehabilitation treatment and educational programs, as well as
failing to provide appropriate food, clothing, visiting and conjugal necessary for his
mental and physical needs.  Plaintiff also  appears to allege that the Board failed in their
responsibility to fund repairs, expansion, purchase new furnishing or material for
repairs, and equipment for repairs.  (Id. at 18-19.)

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, see Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978);[5] however, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior, see Board of Cty. Comm'rs. of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691; Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995).  To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.  See Plumeau v. School Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).  Local government does not cause the alleged violation, and therefore is not liable under § 1983, if it does not have the power to remedy the alleged violation.  See Estate of Brooks v. United States, 197 F.3d 1245, 1248-49 (9th Cir. 1999) (upholding dismissal of § 1983 excessive detention claim against county because under state statute county did not have power either to release federal detainee or bring him before federal judge).

Here, Plaintiff has no claim against the County because he fails to show that he was deprived of a constitutional right.  As discussed above, Plaintiff has failed to establish that any of the individually-named Defendants violated his rights:  Plaintiff was lawfully placed in ASH for legitimate, non-punitive reasons, and the confiscation of an egg crate mattress does not amount to deliberate indifference to a serious medical need.  A city or county cannot be liable for damages based on the actions of one of its employees unless the employee inflicted constitutional harm.  See City of Los Angeles

---

[5]Local governing bodies therefore may be sued directly under § 1983 for monetary, declaratory or injunctive relief for the violation of federal rights.  See Monell, 436 U.S. at 690.  They are absolutely immune from liability for punitive damages under § 1983, however.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

United States District Court

For the Northern District of California

1   v. Heller, 475 U.S. 796, 799 (1986).  Furthermore, even if Plaintiff's other claims

2   regarding the inadequacy of the jail were true and assuming that such inadequacies were

3   constitutionally deficient, he cannot show that the County is responsible under Monell

4   without evidence that the inadequacies were due to a County policy, custom or practice.

5   On the contrary, Defendants have submitted copies of the County's policies regarding

6   religious services, telephone calls, visitation, and education program, which show that

7   such activities are available as long as they do not disrupt or interfere with the safety

8   and security of the institution.  (Sepulveda Decl., Exhs. A, B, C and D.)

9           With respect to the Board, Plaintiff claims that its individual members has the

10  "authority to decide what amendments of the law, city ordinance enacted, or new laws

11  passed by the legislators should be applied when housing and individual SVP at the

12  SCCJ" and that they are therefore liable for their "refusal to issue a legal and

13  appropriate proclamation of law to deal with SVPs."  (Am. Compl. at 9.)  To the extent

14  that Plaintiff is alleging that the Board was remiss in its legislative capacity, it is well

15  established that legislators are entitled to absolute immunity from civil liability for their

16  legislative functions.  See Bogan v. Scott-Harris, 523 U.S. 44, 46 (1998).  This absolute

17  immunity extends to federal, state and local legislators, see id. at 972 (local legislators);

18  Lake County Estates v. Tahoe Planning Agency, 440 U.S. 391, 403 n. 25 (1979)

19  (federal legislators); Tenney v. Brandhove, 341 U.S. 367, 377 (1951) (state legislators),

20  and protects them from injunctive as well as monetary relief, see Supreme Court v.

21  Consumers Union, 446 U.S. 719, 731-34 (1980).  Officials outside the legislative

22  branch are also entitled to legislative immunity when they perform legislative functions.

23  See Bogan, 523 U.S. at 46.

24          Furthermore, members of a governing board cannot be held vicariously liable

25  under 42 U.S.C. § 1983 for conduct by employees.  See Weisbuch v. County of Los

26  Angeles, 119 F.3d 778, 781-82 (9th Cir. 1997).  Personal participation in violating the

27  plaintiff's constitutional rights must be alleged.  See id.  Allegations that members failed

28  to overrule the unconstitutional discretionary acts of subordinates are not enough.  See

1   id.; <u>Gillete v. Delmore</u>, 979 F.2d 1342, 1348 (9th Cir. 1992). Here, Plaintiff has neither

2   shown a violation of his constitutional rights by a County employee, nor has he alleged

3   any personal participation by individual board members in the deprivation of his rights.

4   Accordingly, Plaintiff's claims against the Board must be dismissed for failure to state a

5   claim.

6          **D.      Failure to exhaust administrative remedies**

7          Defendants assert that Plaintiff failed to exhaust his administrative remedies

8   through the available SCCJ grievance procedures with respect to any of his 2003 and

9   2004 claims. (Mot. at 18.) The Court has reviewed Plaintiff's claims on the merits as

10  discussed above. Accordingly, the Court need not decide the issue of exhaustion, and

11  DENIES the motion based thereon as moot.

13                                   **CONCLUSION**

14         For the foregoing reasons, Defendants' motion for summary judgment (Docket

15  No. 65) is GRANTED.

16         This order terminates Docket Nos. 65, 67, 72 & 73.

18  DATED: ___September 30, 2011___          

19                                          EDWARD J. DAVILA
                                            United States District Judge

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA


MANSE SULLIVAN,

                Plaintiff,

   v.

T. P. RYAN, et al.,

                Defendants.

_____/

Case Number: CV04-02089 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____9/30/2011_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Manse Sullivan C 000425-9
Coalinga State Hospital
P. O. Box 5000
Coalinga, CA 93423


Dated: _____9/30/2011_____

                Richard W. Wieking, Clerk
        /s/ By: Elizabeth Garcia, Deputy Clerk